**CALLAN, KOSTER, BRADY & BRENNAN, LLP**
One Whitehall Street
New York, New York 10004
(212) 248-8800
Paul F. Callan (PFC-2005)
Marc Wilner  (MRW-2371)

**07 CV     6114**

**JUDGE HOLWELL**

**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK**

---

BETH JOY KNUTSEN and
KATHLEEN SULLIVAN,

                Plaintiffs,

        -v-

PETCO ANIMAL SUPPLIES STORES, INC. and
PET FOOD EXPERTS, INC.,

                Defendants.

JUN 2 8 2007
U.S.D.C. S.D.N.Y.
CASE NO.: 07 **CASHIERS**

**NOTICE OF REMOVAL
OF CIVIL ACTION**

**JURY TRIAL
DEMANDED**

---

**TO THE HONORABLE JUDGES OF THE UNITED STATES DISTRICT COURT FOR
THE SOUTHERN DISTRICT OF NEW YORK:**

        Defendants PETCO Animal Supplies Stores, Inc. ("PETCO") and Pet Food

Experts, Inc. ("Pet Food Experts"), by their undersigned attorneys, hereby give notice of the

removal of this action from the Supreme Court of the State of New York, County of New York

(wherein it bears Index No. 107198/07), to the United States District Court for the Southern

District of New York pursuant to 28 U.S.C. §§ 1332(d), 1446 and 1453, as revised by the Class

Action Fairness Act of 2005 ("CAFA" or the "Act"). The grounds for removal are as follows:

<u>**NATURE OF THE ACTION**</u>

        1.      The original Complaint (attached as Exhibit A) in this putative class action

was filed in the Supreme Court of the State of New York, County of New York (Index No.

107198/07), on May 22, 2007, against PETCO and Pet Food Experts.  Plaintiffs also filed an

Amended Complaint (attached as Exhibit B) on the same date. The New York Department of State ("Department of State") was served in this action on May 29, 2007. PETCO's registered agent received a copy of the Summons and the original Complaint from the Department of State on June 1, 2007, and Pet Food Experts received a copy of the Summons and the original Complaint from the Department of State on June 6, 2007. Neither PETCO nor Pet Food Experts has been directly served with a copy of the Amended Complaint; rather, the copy of the Amended Complaint attached hereto was e-mailed by Plaintiffs' counsel to the undersigned counsel for PETCO and Pet Food Experts.

2.      The Amended Complaint purports to define a nationwide putative class that includes all persons who purchased Greenies® ("Greenies") dental treats for dogs, in its pre-November 2006 "original formula," between January 2002 and the present. (Am. Compl. ¶¶ 7, 20). Plaintiffs allege that PETCO and Pet Food Experts distributed or sold Greenies in the State of New York and throughout the United States, and that "many dogs have died or have become severely ill due to Greenies." (Am. Compl. ¶¶ 4, 21). Plaintiffs further allege that PETCO and Pet Food Experts were aware of "the defective nature of Greenies but nevertheless continued to distribute, market and sell the product." (Am. Compl. ¶ 22). Based on these allegations, Plaintiffs assert claims premised upon the New York General Business Law, Section 349, *et seq.*, and the law of unjust enrichment, negligence, and breach of express and implied warranties. On behalf of the nationwide class consisting of, "at a minimum," "at least thousands of class members," Plaintiffs request sweeping damages and equitable injunctive relief, including compensatory damages, attorneys' fees and the disgorgement of "all of [Defendants'] revenues in connection with the sale, marketing and distribution of Greenies." (*See, e.g.*, Am. Compl. ¶¶ 8, 25).

2

3.      As explained below, CAFA clearly applies to this putative class action. Indeed, this case is precisely the type of putative class action complaint that Congress intended to be removable under CAFA.

## CAFA APPLIES TO THIS ACTION

4.      The Class Action Fairness Act was passed to expand the scope of federal jurisdiction over interstate class actions by allowing for removal based on minimal diversity. The Act was specifically designed to eliminate what Congress found to be "abuses of the class action device." Class Action Fairness Act of 2005 § 2(a)(2), Pub. L. No. 109-2, § 9, 119 Stat. 4, 14. A key abuse identified by Congress was the fact that under the then-current diversity jurisdiction rules, lawyers bringing class action lawsuits were often able to manipulate these rules in order to "keep cases of national importance out of Federal Court." *Id.* § 2(a)(4)(A). A stated purpose of the Act is to "restore the intent of the framers of the United States Constitution by providing for Federal court consideration of interstate cases of national importance under diversity jurisdiction." *Id.* § 2(b)(2).

5.      CAFA applies "to any civil action commenced on or after [February 18, 2005]," when it was signed into law by the President. *See* Class Action Fairness Act of 2005 § 9, Pub. L. No. 109-2, § 9, 119 Stat. 4, 14. Therefore, this action is obviously subject to CAFA.

6.      In accordance with CAFA, this action may be removed to this Court pursuant to 28 U.S.C. § 1453 because this Court has original jurisdiction pursuant to 28 U.S.C. § 1332(d). This is a putative class action where the matter in controversy exceeds the sum or value of $5,000,000 (taking into account all monetary damages, equitable relief and attorneys' fees sought under all of the putative class members' claims in the aggregate, exclusive of interest and costs). *See* 28 U.S.C. § 1332(d)(2). Moreover, there is "minimum diversity," *i.e.*, the citizenship

3

of "*any* member of a class of plaintiffs is a citizen of a State different from *any* defendant." *See* U.S.C. § 1332(d)(d)(A) (emphasis added).

7.       Although CAFA contains certain jurisdictional "carve-outs," none of them apply to this case. New subsections 1332(d)(5)(A) and (B) specify, respectively, that CAFA does not extend federal diversity jurisdiction to class actions in which (a) the primary defendants are states, state officials, or other governmental entities against whom the district court may be foreclosed from ordering relief ("state action" cases) or (b) the number of members of all proposed plaintiff classes in the aggregate is fewer than 100 ("limited scope" cases). In this case, there are not states, state officials, or other governmental entities who are defendants in this action. In addition, according to Plaintiffs, "at a minimum," there are "at least thousands" of class members that will be swept into this massive putative class action. (Am. Compl. ¶ 8). Accordingly, the provisions of 28 U.S.C. § 1332(d)(5) do not preclude the exercise of federal jurisdiction in this action.

8.       This action similarly does not involve any of the categories of claims described in 28 U.S.C. § 1332(d)(9), which exempts cases solely involving: (i) covered securities under the federal securities laws, or (ii) the internal affairs or governance of a corporation, or (iii) "the rights, duties (including fiduciary duties), and obligations relating to or created pursuant to any security." *Id.* ((d)(9)(A), (B) & (C)).

## PARTIES AND DIVERSITY

9.       When this action was filed, Plaintiffs Beth Joy Knutsen and Kathleen Sullivan were residents of the State of New York and, upon information and belief, were also then citizens of the State of New York. (*See* Am. Compl. ¶ 6). Specifically, Ms. Knutsen resides in the County of New York (address unknown to Defendants), and Ms. Sullivan resides in the County of Suffolk in New York (address unknown to Defendants). *Id.* Even apart from the two

named Plaintiffs, the putative class described in the Amended Complaint clearly includes, in part, New York citizens as members. (*See, e.g.*, Am. Compl. ¶¶ 4, 6-7).

10.     PETCO is a corporation existing under the laws of the State of Delaware. PETCO's principal place of business is in the State of California. (*See* Am. Compl. ¶ 2).

11.     Pet Food Experts is a corporation existing under the laws of the State of Rhode Island. Pet Food Experts' principal place of business is in the State of Rhode Island. (*See* Am. Compl. ¶ 2).[1]

12.     For the purpose of determining diversity, a corporation is deemed to be a citizen of both the state of its incorporation and of the state where it has its principal place of business. 28 U.S.C. § 1332(c)(1). Therefore, CAFA's minimum diversity requirement is satisfied because at least one member of the class of Plaintiffs (*i.e.*, Ms. Knutsen, Ms. Sullivan and at least some members of the putative class) is a citizen of a different state than PETCO and Pet Food Experts. *See* U.S.C. § 1332(d)(2)(A).[2]

## AMOUNT IN CONTROVERSY

13.     Given the allegations in the Amended Complaint, and the fact that the same Plaintiffs' counsel has filed a nearly identical class action in the past expressly seeking more than $5,000,000 in damages,[3] there can be no doubt that the amount-in-controversy requirement is met. Under CAFA, "the claims of individual class members *shall be aggregated* to determine whether the matter in controversy exceeds the sum or value of $5,000,000,

---

[1]     Paragraph 2 of the Amended Complaint admits that neither PETCO nor Pet Food Experts is a New York corporation, and that the corporate headquarters of PETCO and Pet Food Experts are located in California and Rhode Island, respectively.

[2]     As discussed above, minimum diversity is present where "*any* member of a class of plaintiffs is a citizen of a State different from *any* defendant" (28 U.S.C. § 1332(d)(2)(A) (emphasis added)), a standard that is clearly met in this case.

[3]     *See* Complaint in *Glass v. S&M NuTec, LLC*, Case No. 7:06 cv 01534 WCC (S.D.N.Y.) (Complaint attached as Exhibit C).

5

exclusive of interest and costs." 28 U.S.C. § 1332(d)(6) (emphasis added). CAFA's statutory

history makes clear that this aggregation rule should be liberally applied in favor of removal:

> Pursuant to new subsection 1332(d)(6), the claims of the individual class members in any class action shall be aggregated to determine whether the amount in controversy exceeds the sum or value of $5,000,000 (exclusive of interest and costs). *The Committee intends this subsection to be interpreted expansively* . . . .

S. Rep. No. 109-14, at 42-43 (2005) (emphasis added). Further, in determining the value of the

matter in controversy, the value of all the different types of relief sought should be considered

and aggregated (exclusive of interest and costs):

> [T]he Committee intends that a matter be subject to federal jurisdiction under this provision if the value of the matter in litigation exceeds $5,000,000 either from the viewpoint of the plaintiff or the viewpoint of the defendant, and *regardless of the type of relief sought (e.g., damages, injunctive relief, or declaratory relief)* . . . .

*Id.* (emphasis added). In short, unlike the prior rule, which required that each of the plaintiffs'

claims meet the jurisdictional threshold, courts are now required to consider how much is put in

controversy by the *entire action*. If all the claims and types of relief sought in the aggregate put

$5,000,000 in controversy, then the jurisdictional threshold is satisfied.

14. It is clear from Plaintiffs' Amended Complaint that the amount in

controversy exceeds $5,000,000 when all of Plaintiffs' claims, and all of the types of relief

sought therein, are considered and aggregated. First, Plaintiffs seek monetary damages, under

each of at least four distinct causes of action, for all persons nationwide who purchased "Original

Greenies" between January 2002 and the present. (*See, e.g.*, Am. Compl. ¶ 7 and "Wherefore"

Paragraph following ¶ 56). Moreover, even apart from its broad, nationwide scope, Plaintiffs

advance a substantial monetary damages class that would embrace, "at a minimum," "at least

thousands of class members." (Am. Compl. ¶ 8). It appears that Plaintiffs have attempted to

6

avoid diversity jurisdiction under CAFA by alleging "total damages" of "less than $5,000,000," – apparently under each of their causes of action.[4] (Am. Compl., "Wherefore" Paragraph following ¶ 56, Subparagraph (b)).[5] Even before the enactment of CAFA, such obvious attempts to thwart federal court jurisdiction were largely ineffective. But now that CAFA governs the removal of class actions, and provides for the aggregation of all of Plaintiffs' claims and types of relief sought (exclusive of interest and costs), Plaintiffs' attempt to avoid diversity jurisdiction by claiming a "total damages" amount lower than $5,000,000 should be disregarded. The express language of CAFA, buttressed by the legislative history, plainly forecloses Plaintiffs' attempt to avoid the jurisdiction of this Court by artificially limiting their claimed damages to "less than $5,000,000" on each or all of their causes of action.

15. In addition to alleged monetary damages under each of at least four causes of action, which themselves likely aggregate to more than $5,000,000, Plaintiffs *also* seek substantial equitable injunctive relief on behalf of themselves and the same group of "at least thousands of class members." (*See* Am. Compl. ¶¶ 8, 25). Specifically, Plaintiffs in their first cause of action seek an order requiring the disgorgement of "all of [Defendants'] revenues in connection with the sale, marketing and distribution of Greenies" to at least thousands of class members throughout the United States. (Am. Compl. ¶ 25; *see also* Am. Compl. ¶¶ 7 and 8).

---

[4]   In explaining why the enactment of CAFA was necessary, the drafters catalogued a number of class action abuses, including instances in which "class action lawyers typically misuse the jurisdictional threshold to keep their cases out of federal court." (p.10-11).

[5]   Plaintiffs apparently claim "less than $5,000,000" in damages under each of their causes of action. Subparagraph (b) demands "[o]n all causes of action, total damages against the defendants in an amount to be determined at trial in the sum of less than $5,000,000." Subparagraph (b) condenses into one paragraph the allegations of the original Complaint (specifically, "Wherefore" Paragraph, Subparagraphs (b-f)) that set out a separate paragraph for each cause of action and, for each, claimed "damages against the defendants in an amount to be determined at trial in the sum of less than $5,000,000." *But regardless* of whether Plaintiffs are claiming "less than $5,000,000" in damages on each of their causes of action or on their causes of action as a whole, the amount in controversy in this *entire action* is clearly in excess of $5,000,000 when all of Plaintiffs' claims and types of relief sought (monetary damages, equitable injunctive relief, attorneys' fees, etc.) are considered and aggregated.

The legislative history of CAFA makes clear that all types of relief sought (*e.g.*, monetary damages, equitable injunctive relief, etc.) should be considered and aggregated. *See* S. Rep. No. 109-14, at 42-43 (2005). Even before CAFA, courts in the Second Circuit and elsewhere, when determining "amount in controversy" for jurisdictional purposes, have long attempted to quantify and place a value upon non-legal forms of relief, such as equitable injunctive relief. *See, e.g., Beacon Const. Co. v. Matco Elec. Co.*, 521 F.2d 392, 399 (2d Cir. 1975); *see also Hunt v. Washington State Apple Advertising Comm'n*, 432 U.S. 333, 347 (1977).

16.    Further, Plaintiffs also seek – under each of their five distinct causes of action – attorneys' fees and "disbursements." (Am. Compl., "Wherefore" Paragraph following ¶ 56). Attorneys' fees are included in the amount-in-controversy determination if "they are recoverable as a matter of right," meaning there is a statutory or contractual provision authorizing the recovery of such fees. *Givens v. W.T. Grant Co.*, 457 F.2d 612, 614 (2d Cir. 1972), *vacated on other grounds*, 409 U.S. 56 (1972). Here, there is such a statutory provision. Plaintiffs' fifth cause of action seeks recovery under New York General Business Law § 349, *et seq.*, which permits an award of attorneys' fees to a prevailing plaintiff. *See id.* § 349(h). Thus, along with Plaintiffs' legal claims for damages and equitable claims for disgorgement, Plaintiffs' claims for attorneys' fees should also be aggregated among the "at least thousands" of class members' claims. When all of these claims and types of relief are aggregated, it is obvious that the $5,000,000 jurisdictional threshold under CAFA has been satisfied.[6] (*See, e.g.*, Am. Compl. ¶¶ 8, 25.)

17.    *Moreover, even apart from the allegations of Plaintiffs' Amended Complaint*, the same Plaintiffs' counsel that filed this action previously filed a nearly identical

---

[6] Obviously, PETCO and Pet Food Experts strongly dispute that the named Plaintiffs or any putative class member is in fact entitled to any recovery on Plaintiffs' allegations.

class action in this Court expressly seeking *more than* $5,000,000 in damages. That putative class action – *Glass v. S&M NuTec, LLC*, Case No. 7:06 cv 01534 WCC (S.D.N.Y.) (Complaint attached as Exhibit C)[7] – involves basically the same claims premised on alleged injuries to dogs from consumption of Greenies, with the primary difference being only that the plaintiffs in *Glass* are suing the manufacturer of Greenies (S&M NuTec, LLC) instead of a retailer and the retailer's alleged distributor (as is the case here). In *Glass*, Plaintiffs' counsel has specifically alleged that the "*matter in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs*," such that the action is "within the original jurisdiction of this Court by virtue of 28 U.S.C. §§ 1332(d)(2)." (*See Glass* Compl. ¶ 17) (emphasis added). Similar to the instant action, *Glass* purports to be a multi-state class action, and the plaintiffs estimate class membership in the "hundreds of thousands." (*See Glass* Compl. ¶ 20). They also allege substantially similar theories of recovery based on allegations concerning unjust enrichment, breach of warranty, and violation of state consumer protection statutes. (*See, e.g., Glass* Compl. ¶ 2). As is evident from the almost identical allegations involved in the *Glass* case, Plaintiffs' counsel in this case are clearly seeking a "sum or value" that exceeds $5,000,000 in the aggregate since they are seeking significant monetary damages under at least four causes of action as well as substantial equitable injunctive relief, attorneys' fees and disbursements.

### CAFA'S MANDATORY AND DISCRETIONARY REMAND PROVISIONS DO NOT APPLY

18. CAFA contains three provisions that allow state courts to adjudicate certain class actions that have a truly local focus. *See* 28 U.S.C. § 1332(d)(3), (d)(4)(A), and (d)(4)(B). None of these provisions applies in this case.

---

[7] The *Glass* case was subsequently transferred to and is currently pending in the Western District of Missouri, Case No. 06-0853-CV-W-GAF.

9

19.    The provision for mandatory remand established in 28 U.S.C. §
1332(d)(4)(A) does not apply here.  In order to fall within this exception, a class action must
meet *all* of the following four criteria:  (1) the class must be primarily local, meaning that more
than two-thirds of class members must be residents of the state in which the action was filed;
(2) at least one "primary defendant" (whose alleged conduct is central to the class' claims and
from whom the class seeks significant relief) must also be local (*i.e.* "a citizen of the State in
which the action was originally filed"); (3) the "principal injuries" caused by the defendants'
conduct must have occurred in the state where the suit was brought; and (4) no other similar
class actions have been filed against any of the defendants (by the same or other proposed
classes) in the preceding three years.  *See* 28 U.S.C. § 1332(d)(4)(A).  The provision does not
apply to this action because, among other reasons, neither PETCO nor Pet Food Experts is a
"citizen" of the State of New York. *See supra* ¶¶ 10-11.

20.    The provision for mandatory remand established in 28 U.S.C. §
1332(d)(4)(B) is similarly inapposite.  This provision only applies if the class is primarily local
(*i.e.*, two-thirds or more) "*and* the primary defendants[] are citizens of the state in which the
action was originally filed."   28 U.S.C. § 1332(d)(4)(B) (emphasis added).    Subsection
1332(d)(4)(B) clearly does not apply in this case because, *inter alia*, neither Defendant is a
citizen of New York. *See supra* ¶¶ 10-11.  Indeed, as the Amended Complaint itself reflects, the
Defendants are citizens of states other than New York.  (Am. Compl. ¶ 2).

21.    The provision for discretionary remand established in 28 U.S.C. §
1332(d)(3) is inapplicable for the same reason.  This subsection permits, but does not require, a
federal court to remand a case if more than one-third but less than two-thirds of the members of a
proposed class of plaintiffs and the "primary defendants" are all citizens of the state in which the

action was filed, and the claims raise issues that are truly local in nature based on an enumerated list of factors. *See* 28 U.S.C. § 1332(d)(3). In this case, and as with the other remand provisions described above, subsection 1332(d)(3) does not apply because, *inter alia*, no Defendant is a citizen of New York. *See supra* ¶¶ 10-11.

## REMOVAL PROCEDURES

22. As described in Paragraph 1, *supra*, the Department of State was served with the Summons and original Complaint in this action on May 29, 2007. PETCO's registered agent received a copy of the Summons and the original Complaint from the Department of State via certified mail on June 1, 2007, and Pet Food Experts received a copy of the Summons and the original Complaint from the Department of State via certified mail on June 6, 2007. This Notice of Removal was filed on June 28, 2007, and is thus timely under 28 U.S.C. § 1446.

23. The original Complaint, Amended Complaint, Summons, and the Notice of Removal to Federal Court constitute all process and pleadings in the state court action. The original Complaint and Amended Complaint are attached hereto as Exhibits A and B, respectively. The Summons is attached as Exhibit D. The Notice of Removal to Federal Court is attached as Exhibit E.

24. PETCO and Pet Food Experts reserve the right to amend or supplement this Notice of Removal, and reserve all rights and defenses, including those available under Fed. R. Civ. P. 12.

25. Defendants request a trial by jury on all issues triable by right to a jury.

WHEREFORE, Defendants PETCO Animal Supplies Stores, Inc. and Pet Food Experts, Inc. respectfully remove this case to the United States District Court for the Southern District of New York.

11

Dated:  New York, New York
        June 28, 2007

                         Respectfully submitted,

                         CALLAN, KOSTER, BRADY &
                           BRENNAN, LLP

                         By:    *Paul F. Callan*
                               Paul F. Callan  (PFC-2005)
                               Marc Wilner  (MRW-2371)
                               One Whitehall Street
                               New York, New York 10004
                               (212) 248-8800

                               Attorneys for Defendants PETCO
                               Animal Supplies Stores, Inc. and
                               Pet Food Experts, Inc.

OF COUNSEL:

Laura C. Fey
SHOOK, HARDY & BACON L.L.P.
2555 Grand Boulevard
Kansas City, Missouri 64108-2613
Telephone:  (816) 474-6550

Attorney for Defendants PETCO
Animal Supplies Stores, Inc. and
Pet Food Experts, Inc.



SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

-----------------------------------------X

Beth Joy Knutsen and
Kathleen Sullivan,

     Plaintiffs,

   -against-

Petco Animal Supplies Stores, Inc. and
Pet Food Experts, Inc.,

     Defendants.

----------------------------------------X

Index No. 107199/07

**COMPLAINT**

  Plaintiffs, by and through their attorneys, McLaughlin &
Stern, LLP, and Abbey Spanier Rodd Abrams & Paradis, LLP, as and
for their complaint against the defendants, allege:

**PARTIES**

  1. Plaintiffs Beth Joy Knutsen and Kathleen Sullivan
("Knutsen" and "Sullivan", respectively, or collectively
"plaintiffs") were the lawful owners of two dogs.  Knutsen owned
one dog and Sullivan owned the other.

  2. Upon information and belief, Petco Animal Supplies
Stores, Inc. ("Petco") and Pet Food Experts, Inc. ("PFX") are
California and Rhode Island corporations, respectively.  Petco
maintains its corporate headquarters at 9125 Rehco Road, San
Diego, CA 92121 and PFX maintains its corporate headquarters at
1 John Deane Memorial Blvd., Cumberland, Rhode Island 02864.

### JURISDICTION AND VENUE

3.    This Court has jurisdiction over the defendants pursuant to CPLR §301, §302(a)(1), CPLR §302(a)(2), CPLR §302 (a)(3)(i) and CPLR §302(a)(3)(ii).

4.    At all times relevant herein, PFX distributed and marketed and Petco sold and marketed certain dog treats called Greenies throughout the United States including but not limited to the State of New York.

5.    Greenies are manufactured by a company called S&M NuTec, LLC.   Thereafter, defendants placed Greenies in the stream of commerce by distributing, marketing and selling Greenies.   PFX distributed Greenies to retailers such as Petco.   Petco, would then, in turn, sell Greenies to the general public including, *inter alia*, the plaintiffs.

6.    Venue properly lies in the County of New York because Knutsen resides therein at the time of filing this action. Sullivan is a resident of the County of Suffolk.   Petco is a foreign corporation licensed to do business within the State of New York with several offices and stores located in New York County.   PFX is a foreign corporation licensed to do business within the State of New York and regularly conducts business in New York County.

### CLASS ACTION ALLEGATIONS

7.    This Complaint sets forth a Class that includes those persons who purchased Original Greenies (herein "Greenies") between January 2002 and the present from Defendants. Specifically excluded from the Class are Defendants and their employees, officers, directors, affiliates, and legal representatives.

8.    CPLR § 901(a)(1).  <u>Numerosity of the Class</u>.  The Class is so numerous that the individual joinder of all Class Members is impractical under the circumstances of the case.  While the exact number of Class Members is unknown to Plaintiffs at this time, Plaintiffs believe that at a minimum, there are at least thousands of Class Members.

9.    CPLR §901(a)(2).  <u>Common Questions Predominate</u>. Common questions of law and fact that apply to Plaintiffs and the other Class Members predominate.  The common legal and factual questions contained within these issues include, but are not limited to, the following:

     i. Whether Defendants were unjustly enriched by Class Plaintiffs' Greenies purchases;

     ii. Whether Defendant Petco breached its express warranties with respect to Class Plaintiffs' Greenies purchases;

    iii.   Whether Defendant Petco breached its implied warranties of merchantability with respect to Class Plaintiffs' Greenies purchases;

    iv.   Whether Defendants violated General Business Law § 349, et seq.;

    v.   Whether Defendants maintained a duty to Class Plaintiffs to distribute, market, and sell a reasonably safe product, namely Greenies;

    vi.   Whether Defendants breached their duty to Class Plaintiffs by distributing, selling, and marketing Greenies, which were not reasonably safe, and placing Greenies in the stream of commerce in an unsafe condition;

    vii.   Whether Defendants maintained a duty to adequately warn Class Plaintiffs of the risks associated with Greenies, in particular, the indigestibility and insolubility risks;

    viii.   Whether Defendants made negligent misrepresentations to Class Plaintiffs; and

    .ix.   Whether Class Plaintiffs have sustained damages and, if so, the proper measure of such damages.

These questions are subject to a common proof that will be determinative of substantial questions material to Defendants' liability to Class Members.

10.  CPLR §901(a)(3).  <u>Typicality of Claims</u>.  Plaintiffs' claims are typical of the claims of Class Members, all of whom have been, *inter alia*, either directly or indirectly, the subject of Defendants' illegal conduct as described herein. Greenies are an inherently dangerous product and are unreasonably dangerous to all dogs regardless of the dogs' physical characteristics, behavioral characteristics, and/or tendency to gulp food.

11.  CPLR §901(a)(4).  <u>Adequacy of Representation</u>. Plaintiffs will fairly and adequately protect the interest of Class Members.  Plaintiffs have been injured as a result of Defendants' wrongful conduct.  Plaintiffs are therefore members of the Class, are united by common interest, and are adequate representatives since they have no interests that are adverse to the interests of absent Class Members.  Plaintiffs share identical or similar legal rights as other absent Class Members. Plaintiffs have no interest antagonistic to the Class Members. Plaintiffs have retained counsel who are competent and experienced in the prosecution of complex class actions. Plaintiffs and their counsel intend to prosecute this action vigorously for the benefit of the Class.  Plaintiffs and their

counsel will fairly and adequately protect the interests of the
Members of the Class.

12.    CPLR §901(a)(5).  Superiority and Substantial
Benefit.  A class action is superior to other available methods
for the fair and efficient adjudication of this litigation since
the individual litigation of Class members' claims is
impracticable.  It would unduly burdensome for the courts to
adjudicate identical legal and factual issues in thousands of
cases.  Individual litigation increases delay and expense to all
parties, and especially the court system, associated with the
resolution of the complex legal and factual issues of the case.
The prosecution of separate actions by the individual members of
the Class would create a risk of inconsistent adjudications with
respect to individual Class members, thus establishing
incompatible standards of conduct for the Defendants.  The
prosecution of separate actions would create a risk of
adjudications that would be dispositive of the interests of the
other Class members who are not parties to such adjudications,
thus substantially impairing the ability of such non-party Class
members to protect their interests.

13.    Plaintiffs are unaware of any difficulties likely to
be encountered in the management of this action that would
preclude its maintenance as a class action.  Accordingly, the
proposed Class fulfills the certification criteria of New York

law and the certification of the above-defined Class is
appropriate under one or more of the provisions of New York law.

14.  CPLR §901(b).  Plaintiffs and the Class do not allege
any claims under or rely upon any statute creating or imposing a
penalty or a minimum measure of recovery.  To the extent that
N.Y. GBL §349, *et seq.* provides for such a recovery, Plaintiffs
have sought only actual damages thereunder.

**STATEMENT OF FACTS COMMON TO ALL CAUSES OF ACTION**

15.  Beginning in or about November 2000, Greenies became
available in various sizes. Greenies are shaped like the head of
a toothbrush on one end and the knuckle of a bone on the other
end. Greenies are dog treats which are also used to
prevent and ameliorate halitosis in dogs.

16.  Greenies ingredients include, among other things,
processed wheat gluten, glycerin, natural flavor, powdered
cellulose, monosodium phosphate, monoglycerides of edible fatty
acids, magnesium stearate and chlorophyll.

17.  Sometime after January 2005 and prior to the alleged
reformulation of the Greenies formula in 2006, Knutsen and
Sullivan purchased bags of Greenies at Petco stores located in
New York and Suffolk counties, respectively.  Upon information
and belief, PFX distributed these Greenies to Petco.  The bags
of Greenies purchased by plaintiffs were ordinary in that they
were in their original packaging without alteration and

identical to other Greenies on the market.

18.  After purchasing the Greenies, plaintiff read articles and saw television shows concerning the dangers that Greenies posed to dogs.  CNN, ABC, CBS, and the Associated Press, as well as other reputable national news sources, all reported on the danger of Greenies.  The FDA has Greenies on its Docket #2006P-0126 and an article was published by a prominent Virginia Tech Veterinary professor entitled "Greenies Causing Esophageal Obstructions in Dogs".

19.  Apparently, the size, shape and ingredients in the Greenies made them indigestible and caused them to become lodged in dogs' intestines and esophagi.  Once lodged, Greenies increased in size by approximately 35% due to its tendency to absorb liquids.  In short, Greenies tend to be insoluble due, in part, to the manufacturing process and the inferior wheat gluten proteins that are used to manufacture the product.

20.  In or around November 2006, the company that manufactured Greenies changed the formula in order to cure these defects.

21.  Many dogs have died and have become severely ill due to Greenies.

22.  Petco and PFX were well-aware of these tragedies and the defective nature of Greenies but nevertheless continued to distribute, market and sell the product.

## AS AND FOR A FIRST CAUSE OF ACTION
### (Unjust Enrichment)

23.   Plaintiffs repeat and reallege each and every allegation as if set forth fully herein.  Plaintiffs bring this claim against Petco and PFX for the period June 1, 2001 through and including the date of this Complaint.

24.   Defendants received financial benefits from plaintiffs' purchase of greenies.  The retention of said financial benefit by the defendants at plaintiffs' expense is unjust considering their false representations and the harm that Greenies have caused on dogs and their owners.

25.   As a result, defendants should be equitably ordered to disgorge all of their revenues in connection with the sale, marketing and distribution of Greenies.

## AS AND FOR A SECOND CAUSE OF ACTION
### (Breach of Express Warranty)

26.   Plaintiffs repeat and reallege each and every allegation as if set forth fully herein.  Plaintiffs bring this claim against Petco for the period June 1, 2003 through and including the date of this Complaint.

27.   Defendant sold, marketed and distributed Greenies which represented certain affirmations of fact and promised to purchasers that Greenies were "fully digestible" and that "[a] leading nationally-know [sic], highly respected independent

third-party testing research kennel documented that Greenies are
not only highly digestible and nutritious, but Greenies also
increased the digestibility of other dog food in the intestine
with Greenies."

28.  Plaintiffs purchased Greenies, in part, due to the
aforementioned express warranties.

29.  In violation of the New York State's Uniform
Commercial Code §2-313, Greenies did not conform to these
representations.

30.  Greenies are not highly digestible, fully digestible
or aid in the digestion of other foods.

31.  Had plaintiffs known the falsity of the express
warranties, they would not have purchased Greenies from
defendants.

32.  Said express warranties were patently false and
deficient at the time they were made.

33.  At the time of purchase, plaintiffs were unaware and
had no reason to believe that defendants' warranties were false.

34.  Due to the falsity of defendant's express warranties,
plaintiffs were left holding the bag of a defective and
essentially useless and unsafe product.

### AS AND FOR A THIRD CAUSE OF ACTION
#### (Breach of Implied Warranty of Merchantability)

35.  Plaintiffs repeat and re-allege each and every

allegation as if set forth fully herein.  Plaintiffs bring this claim against Petco for the period June 1, 2003 through and including the date of this Complaint.

36.   Implied warranty of merchantability states that goods will be fit for the ordinary purposes for which they are used.

37.   Plaintiffs purchased Greenies, in part, due to said implied merchantability of goods.

38.   In violation of the New York State's Uniform Commercial Code §2-314, Greenies were not fit for the ordinary purposes for which they are used.

39.   Greenies are dog treats which are not digestible or soluble and cause intestinal and esophageal obstructions in dogs.

40.   Had Plaintiffs known the non-merchantability of Greenies, they would not have purchased the product.

41.   Defendant's implied warranties were patently false and deficient at the time they were made.

42.   Plaintiffs were unaware and had no reason to believe that defendant's implied warranties were false.  Defendant had notice of the defects inherent in Greenies.

43.   Due to the falsity of defendant's implied warranties, plaintiffs purchased Greenies, failed to use them in full, and were left holding a defective product without proper recourse.

## AS AND FOR A FOURTH CAUSE OF ACTION
### (Negligence)

44.  Plaintiffs repeat and reallege each and every allegation as if set forth fully herein.  Plaintiffs bring this claim against Petco and PFX for the period June 1, 2004 through and including the date of this Complaint.

45.  Defendants had a legal duty to reasonably market, distribute and sell Greenies.

46.  Defendants breached said duty by marketing, distributing and selling Greenies which were indigestible and insoluble.

47.  Defendants knew or should have known that Greenies were indigestible and insoluble.

48.  The indigestibility and insolubility of Greenies made the product defective causing plaintiffs to discard the product and no longer use it after purchasing same.

49.  Plaintiffs were damaged by purchasing a defective product and not receiving reimbursement or benefit from same.

## AS AND FOR A FIFTH CAUSE OF ACTION
### (Violation of N.Y. General Business Law Section 349, et seq.)

50.  Plaintiffs repeat and reallege each and every allegation as if set forth fully herein.

51.  Plaintiffs bring this claim against Petco for the period June 1, 2004 through and including the date of this

Complaint.

52.   Section 349(a) of the New York General Business Law states: "Deceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service in this state are hereby declared unlawful."

53.   The elements of a §349 claim are: (1) the challenged act or practice was consumer-oriented; (2) the challenged act or practice was misleading in a material way; and (3) the plaintiff suffered injury as a result of the deceptive act.  Whether a representation or an omission, the deceptive practice must be likely to mislead a reasonable consumer acting reasonably under the circumstances.

54.   Defendant's deceptive acts, practices and omissions have a broad impact on consumers in the State of New York at large, including Plaintiffs and Class Members.

55.   Defendant's deceptive acts and omissions occurred in the course of selling consumer products.

56.   Defendant misrepresented and concealed the material facts set forth above.  The misrepresentations and omissions are "materially misleading" for the reasons set forth above.  Absent the misrepresentations, consumers would not have purchased Greenies.  Plaintiffs and the other members of the Class were damaged as a result of their purchase of Greenies.

WHEREFORE, plaintiffs demand judgment against defendants as follows:

(a) An order that this action shall proceed as a class action under Article 9 of the New York CPLR, and appointing Plaintiffs and their counsel to represent the Class;

(b) On the FIRST CAUSE OF ACTION damages against the defendants in an amount to be determined at trial in the sum of less than $5,000,000;

(c) On the SECOND CAUSE OF ACTION damages against the defendants in an amount to be determined at trial in the sum of less than $5,000,000;

(d) On the THIRD CAUSE OF ACTION damages against the defendants in an amount to be determined at trial in the sum of less than $5,000,000;

(e) On the FOURTH CAUSE OF ACTION damages against the defendants in an amount to be determined at trial in the sum of less than $5,000,000;

(f) On the FIFTH CAUSE OF ACTION; actual damages against the defendants in an amount to be determined at trial; and

(g) On all causes of action, that plaintiffs have such other and further relief as this Court deems just, proper and equitable together with the costs, interest, disbursements and the reasonable attorneys' fees of this action.

Dated:     New York, New York
           May 22, 2007


                                    McLAUGHLIN & STERN, LLP

                                    By: _____
                                    Steven H. Hyman
                                    Alan E. Sash
                                    Attorneys for Plaintiffs
                                    260 Madison Avenue
                                    New York, NY 10016
                                    (212) 448-1100


                                    ABBEY SPANIER RODD ABRAMS
                                    & PARADIS, LLP
                                    Arthur N. Abbey
                                    Stephen T. Rodd
                                    Orin Kurtz
                                    212 East 39th Street
                                    New York, New York 10016
                                    Telephone: (212) 889-3700
                                    Facsimile: (212) 684-5191



SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

--------------------------------------------X

Beth Joy Knutsen and
Kathleen Sullivan,

                    Plaintiffs,

        -against-

Petco Animal Supplies Stores, Inc. and
Pet Food Experts, Inc.,

                    Defendants.

--------------------------------------------X

Index No.107198/07

**AMENDED COMPLAINT**

NEW YORK
COUNTY CLERK'S OFFICE

**MAY 2 2 2007**

NOT COMPARED
WITH COPY FILE

    Plaintiffs, by and through their attorneys, McLaughlin &
Stern, LLP, and Abbey Spanier Rodd Abrams & Paradis, LLP, as and
for their complaint against the defendants, allege:

                         **PARTIES**

    1.    Plaintiffs Beth Joy Knutsen and Kathleen Sullivan
("Knutsen" and "Sullivan", respectively, or collectively
"plaintiffs") were the lawful owners of two dogs.  Knutsen owned
one dog and Sullivan owned the other.

    2.    Upon information and belief, Petco Animal Supplies
Stores, Inc. ("Petco") and Pet Food Experts, Inc. ("PFX") are
California and Rhode Island corporations, respectively.  Petco
maintains its corporate headquarters at 9125 Rehco Road, San
Diego, CA 92121 and PFX maintains its corporate headquarters at
1 John Deane Memorial Blvd., Cumberland, Rhode Island 02864.

### JURISDICTION AND VENUE

3.    This Court has jurisdiction over the defendants
pursuant to CPLR §301, §302(a)(1), CPLR §302(a)(2), CPLR §302
(a)(3)(i) and CPLR §302(a)(3)(ii).

4.    At all times relevant herein, PFX distributed and
marketed and Petco sold and marketed certain dog treats called
Greenies throughout the United States including but not limited
to the State of New York.

5.    Greenies are manufactured by a company called S&M
NuTec, LLC.  Thereafter, defendants placed Greenies in the
stream of commerce by distributing, marketing and selling
Greenies.  PFX distributed Greenies to retailers such as
Petco.  Petco, would then, in turn, sell Greenies to the
general public including, *inter alia*, the plaintiffs.

6.    Venue properly lies in the County of New York because
Knutsen resides therein at the time of filing this action.
Sullivan is a resident of the County of Suffolk.  Petco is a
foreign corporation licensed to do business within the State of
New York with several offices and stores located in New York
County.  PFX is a foreign corporation licensed to do business
within the State of New York and regularly conducts business in
New York County.

## CLASS ACTION ALLEGATIONS

7.    This Complaint sets forth a Class that includes those persons who purchased Original Greenies (herein "Greenies") between January 2002 and the present from Defendants. Specifically excluded from the Class are Defendants and their employees, officers, directors, affiliates, and legal representatives.

8.    CPLR § 901(a)(1).  <u>Numerosity of the Class</u>.  The Class is so numerous that the individual joinder of all Class Members is impractical under the circumstances of the case.  While the exact number of Class Members is unknown to Plaintiffs at this time, Plaintiffs believe that at a minimum, there are at least thousands of Class Members.

9.    CPLR §901(a)(2).  <u>Common Questions Predominate</u>. Common questions of law and fact that apply to Plaintiffs and the other Class Members predominate.  The common legal and factual questions contained within these issues include, but are not limited to, the following:

> i.    Whether Defendants were unjustly enriched by Class Plaintiffs' Greenies purchases;
>
> ii.   Whether Defendant Petco breached its express warranties with respect to Class Plaintiffs' Greenies purchases;

iii.   Whether Defendant Petco breached its implied
       warranties of merchantability with respect
       to Class Plaintiffs' Greenies purchases;

iv.    Whether Defendants violated General Business
       Law § 349, et seq.;

v.     Whether Defendants maintained a duty to
       Class Plaintiffs to distribute, market, and
       sell a reasonably safe product, namely
       Greenies;

vi.    Whether Defendants breached their duty to
       Class Plaintiffs by distributing, selling,
       and marketing Greenies, which were not
       reasonably safe, and placing Greenies in the
       stream of commerce in an unsafe condition;

vii.   Whether Defendants maintained a duty to
       adequately warn Class Plaintiffs of the
       risks associated with Greenies, in
       particular, the indigestibility and
       insolubility risks;

viii.  Whether Defendants made negligent
       misrepresentations to Class Plaintiffs; and

ix.    Whether Class Plaintiffs have sustained
       damages and, if so, the proper measure of
       such damages.

These questions are subject to a common proof that will be determinative of substantial questions material to Defendants' liability to Class Members.

10.    CPLR §901(a)(3).    Typicality of Claims.    Plaintiffs' claims are typical of the claims of Class Members, all of whom have been, *inter alia*, either directly or indirectly, the subject of Defendants' illegal conduct as described herein. Greenies are an inherently dangerous product and are unreasonably dangerous to all dogs regardless of the dogs' physical characteristics, behavioral characteristics, and/or tendency to gulp food.

11.    CPLR §901(a)(4).    Adequacy of Representation. Plaintiffs will fairly and adequately protect the interest of Class Members.    Plaintiffs have been injured as a result of Defendants' wrongful conduct.    Plaintiffs are therefore members of the Class, are united by common interest, and are adequate representatives since they have no interests that are adverse to the interests of absent Class Members.    Plaintiffs share identical or similar legal rights as other absent Class Members. Plaintiffs have no interest antagonistic to the Class Members. Plaintiffs have retained counsel who are competent and experienced in the prosecution of complex class actions. Plaintiffs and their counsel intend to prosecute this action vigorously for the benefit of the Class.    Plaintiffs and their

counsel will fairly and adequately protect the interests of the
Members of the Class.

12.  CPLR §901(a)(5).  <u>Superiority and Substantial
Benefit.</u>  A class action is superior to other available methods
for the fair and efficient adjudication of this litigation since
the individual litigation of Class members' claims is
impracticable.  It would unduly burdensome for the courts to
adjudicate identical legal and factual issues in thousands of
cases.  Individual litigation increases delay and expense to all
parties, and especially the court system, associated with the
resolution of the complex legal and factual issues of the case.
The prosecution of separate actions by the individual members of
the Class would create a risk of inconsistent adjudications with
respect to individual Class members, thus establishing
incompatible standards of conduct for the Defendants.  The
prosecution of separate actions would create a risk of
adjudications that would be dispositive of the interests of the
other Class members who are not parties to such adjudications,
thus substantially impairing the ability of such non-party Class
members to protect their interests.

13.  Plaintiffs are unaware of any difficulties likely to
be encountered in the management of this action that would
preclude its maintenance as a class action.  Accordingly, the
proposed Class fulfills the certification criteria of New York

law and the certification of the above-defined Class is
appropriate under one or more of the provisions of New York law.

14.   CPLR §901(b).  Plaintiffs and the Class do not allege
any claims under or rely upon any statute creating or imposing a
penalty or a minimum measure of recovery.  To the extent that
N.Y. GBL §349, et seq. provides for such a recovery, Plaintiffs
have sought only actual damages thereunder.

### STATEMENT OF FACTS COMMON TO ALL CAUSES OF ACTION

15.   Beginning in or about November 2000, Greenies became
available in various sizes. Greenies are shaped like the head of
a toothbrush on one end and the knuckle of a bone on the other
end. Greenies are dog treats which are also used to
prevent and ameliorate halitosis in dogs.

16.   Greenies ingredients include, among other things,
processed wheat gluten, glycerin, natural flavor, powdered
cellulose, monosodium phosphate, monoglycerides of edible fatty
acids, magnesium stearate and chlorophyll.

17.   Sometime after January 2005 and prior to the alleged
reformulation of the Greenies formula in 2006, Knutsen and
Sullivan purchased bags of Greenies at Petco stores located in
New York and Suffolk counties, respectively.  Upon information
and belief, PFX distributed these Greenies to Petco.  The bags
of Greenies purchased by plaintiffs were ordinary in that they
were in their original packaging without alteration and

identical to other Greenies on the market.

18.  After purchasing the Greenies, plaintiff read articles and saw television shows concerning the dangers that Greenies posed to dogs.  CNN, ABC, CBS, and the Associated Press, as well as other reputable national news sources, all reported on the danger of Greenies.  The FDA has Greenies on its Docket #2006P-0126 and an article was published by a prominent Virginia Tech Veterinary professor entitled "Greenies Causing Esophageal Obstructions in Dogs".

19.  Apparently, the size, shape and ingredients in the Greenies made them indigestible and caused them to become lodged in dogs' intestines and esophagi.  Once lodged, Greenies increased in size by approximately 35% due to its tendency to absorb liquids.  In short, Greenies tend to be insoluble due, in part, to the manufacturing process and the inferior wheat gluten proteins that are used to manufacture the product.

20.  In or around November 2006, the company that manufactured Greenies changed the formula in order to cure these defects.

21.  Many dogs have died and have become severely ill due to Greenies.

22.  Petco and PFX were well-aware of these tragedies and the defective nature of Greenies but nevertheless continued to distribute, market and sell the product.

## AS AND FOR A FIRST CAUSE OF ACTION
### (Unjust Enrichment)

23.  Plaintiffs repeat and reallege each and every allegation as if set forth fully herein.  Plaintiffs bring this claim against Petco and PFX for the period June 1, 2001 through and including the date of this Complaint.

24.  Defendants received financial benefits from plaintiffs' purchase of greenies.  The retention of said financial benefit by the defendants at plaintiffs' expense is unjust considering their false representations and the harm that Greenies have caused on dogs and their owners.

25.  As a result, defendants should be equitably ordered to disgorge all of their revenues in connection with the sale, marketing and distribution of Greenies.

## AS AND FOR A SECOND CAUSE OF ACTION
### (Breach of Express Warranty)

26.  Plaintiffs repeat and reallege each and every allegation as if set forth fully herein.  Plaintiffs bring this claim against Petco for the period June 1, 2003 through and including the date of this Complaint.

27.  Defendant sold, marketed and distributed Greenies which represented certain affirmations of fact and promised to purchasers that Greenies were "fully digestible" and that "[a] leading nationally-know [sic], highly respected independent

third-party testing research kennel documented that Greenies are
not only highly digestible and nutritious, but Greenies also
increased the digestibility of other dog food in the intestine
with Greenies."

28.  Plaintiffs purchased Greenies, in part, due to the
aforementioned express warranties.

29.  In violation of the New York State's Uniform
Commercial Code §2-313, Greenies did not conform to these
representations.

30.  Greenies are not highly digestible, fully digestible
or aid in the digestion of other foods.

31.  Had plaintiffs known the falsity of the express
warranties, they would not have purchased Greenies from
defendants.

32.  Said express warranties were patently false and
deficient at the time they were made.

33.  At the time of purchase, plaintiffs were unaware and
had no reason to believe that defendants' warranties were false.

34.  Due to the falsity of defendant's express warranties,
plaintiffs were left holding the bag of a defective and
essentially useless and unsafe product.

### AS AND FOR A THIRD CAUSE OF ACTION
### (Breach of Implied Warranty of Merchantability)

35.  Plaintiffs repeat and re-allege each and every

allegation as if set forth fully herein. Plaintiffs bring this
claim against Petco for the period June 1, 2003 through and
including the date of this Complaint.

36. Implied warranty of merchantability states that goods
will be fit for the ordinary purposes for which they are used.

37. Plaintiffs purchased Greenies, in part, due to said
implied merchantability of goods.

38. In violation of the New York State's Uniform
Commercial Code §2-314, Greenies were not fit for the ordinary
purposes for which they are used.

39. Greenies are dog treats which are not digestible or
soluble and cause intestinal and esophageal obstructions in
dogs.

40. Had Plaintiffs known the non-merchantability of
Greenies, they would not have purchased the product.

41. Defendant's implied warranties were patently false and
deficient at the time they were made.

42. Plaintiffs were unaware and had no reason to believe
that defendant's implied warranties were false.  Defendant had
notice of the defects inherent in Greenies.

43. Due to the falsity of defendant's implied warranties,
plaintiffs purchased Greenies, failed to use them in full, and
were left holding a defective product without proper recourse.

## AS AND FOR A FOURTH CAUSE OF ACTION
### (Negligence)

44.    Plaintiffs repeat and reallege each and every allegation as if set forth fully herein.    Plaintiffs bring this claim against Petco and PFX for the period June 1, 2004 through and including the date of this Complaint.

45.    Defendants had a legal duty to reasonably market, distribute and sell Greenies.

46.    Defendants breached said duty by marketing, distributing and selling Greenies which were indigestible and insoluble.

47.    Defendants knew or should have known that Greenies were indigestible and insoluble.

48.    The indigestibility and insolubility of Greenies made the product defective causing plaintiffs to discard the product and no longer use it after purchasing same.

49.    Plaintiffs were damaged by purchasing a defective product and not receiving reimbursement or benefit from same.

## AS AND FOR A FIFTH CAUSE OF ACTION
### (Violation of N.Y. General Business Law Section 349, et seq.)

50.    Plaintiffs repeat and reallege each and every allegation as if set forth fully herein.

51.    Plaintiffs bring this claim against Petco and PFX for the period June 1, 2004 through and including the date of this

Complaint.

52.   Section 349(a) of the New York General Business Law
states: "Deceptive acts or practices in the conduct of any
business, trade or commerce or in the furnishing of any service
in this state are hereby declared unlawful."

53.   The elements of a §349 claim are: (1) the challenged
act or practice was consumer-oriented; (2) the challenged act or
practice was misleading in a material way; and (3) the plaintiff
suffered injury as a result of the deceptive act.  Whether a
representation or an omission, the deceptive practice must be
likely to mislead a reasonable consumer acting reasonably under
the circumstances.

54.   Defendants' deceptive acts, practices and omissions
have a broad impact on consumers in the State of New York at
large, including Plaintiffs and Class Members.

55.   Defendants' deceptive acts and omissions occurred in
the course of selling consumer products.

56.   Defendants misrepresented and concealed the material
facts set forth above.  The misrepresentations and omissions are
"materially misleading" for the reasons set forth above.  Absent
the misrepresentations, consumers would not have purchased
Greenies.  Plaintiffs and the other members of the Class were
damaged as a result of their purchase of Greenies.

WHEREFORE, plaintiffs demand judgment against defendants as follows:

(a) An order that this action shall proceed as a class action under Article 9 of the New York CPLR, and appointing Plaintiffs and their counsel to represent the Class;

(b) On all causes of action, total damages against the defendants in an amount to be determined at trial in the sum of less than $5,000,000; and

(c) On all causes of action, that plaintiffs have such other and further relief as this Court deems just, proper and equitable together with the costs, interest, disbursements and the reasonable attorneys' fees of this action.

Dated:     New York, New York
           May 22, 2007

                              McLAUGHLIN & STERN, LLP

                              By: _____
                              Steven H. Hyman
                              Alan E. Sash
                              Attorneys for Plaintiffs
                              260 Madison Avenue
                              New York, NY 10016
                              (212) 448-1100

                              ABBEY SPANIER RODD ABRAMS
                              & PARADIS, LLP
                              Arthur N. Abbey
                              Stephen T. Rodd
                              Orin Kurtz
                              212 East 39th Street
                              New York, New York 10016
                              Telephone: (212) 889-3700
                              Facsimile: (212) 684-5191



IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| JOSH GLASS, JUDY J. CLARK, LYDIA SCHARF, GENE DUBRETSKOY, FERN FINER, CHERYL STUBBS, WAYNE AMEDURE, ROBERT MAGOON, MARK JUDSON AND ANTHONY COTELLESE, individually, and on behalf of all others similarly situated, | CASE NO.: 06 cv ___ (  ) |
| Plaintiffs, | CLASS ACTION COMPLAINT |
| -v- | JURY TRIAL DEMANDED |
| S&M NUTEC, LLC |  |
| Defendant. | |



RECEIVED
FEB 2 4 2006
U.S.D.C. S.D. N.Y.
CASHIERS

Plaintiffs, Josh Glass, Judy J. Clark, Lydia Scharf, Gene Dubretskoy, Fern Finer,

Cheryl Stubbs, Wayne Amedure, Robert Magoon, Mark Judson and Anthony Cotellese

("Plaintiffs") by and through their undersigned attorneys, hereby complain against S&M NuTec

LLC ("NuTec" or "Defendant") on behalf of themselves and all others similarly situated as

follows. Plaintiffs' allegations are based upon information and belief, except as to their own

actions, which are based on knowledge. Plaintiffs' information and belief are based on the

investigation of their counsel, as follows:

## OVERVIEW

1.      Plaintiffs have filed this class action, on behalf of themselves and all others

similarly situated to obtain damages, restitution, and injunctive relief for the Class (as defined

below) from Defendant NuTec.

2.      As alleged more fully herein, NuTec, engaged in deceptive acts and practices,

breached its implied warranty of merchantability, failed to disclose the defect inherent in

Greenies (as defined herein), and consequently was unjustly enriched by selling the Greenies.

3.      Though faced with mounting consumer complaints concerning Greenies,

NuTec has failed and refused to remedy the defect inherent in the Greenies.  Instead, NuTec

continues to remain silent, while consumers unknowingly continue to purchase defective

Greenies.

4.      Despite NuTec's knowledge of the defective nature of the Greenies, NuTec has

refused to recall the defective Greenies.

5.      Plaintiffs seek actual damages and equitable relief, including the  recall of the

Greenies, civil penalties, costs and expenses of litigation, including attorneys' fees, and all other

relief the Court deems appropriate.

## THE PARTIES

6.      Plaintiff Josh Glass is a citizen and resident of the State of California.  Plaintiff

Glass purchased and used Greenies during the class period and has suffered damages as a

result of Defendant's wrongful conduct alleged herein. Plaintiff Glass's pet dog died as a

result of intestinal blockage caused by Greenies.

7.      Plaintiff Judy J. Clark  is a citizen and resident of the State of Kentucky.

Plaintiff Clark purchased and used Greenies during the Class period and has suffered damages

as a result of the wrongful conduct of Defendant alleged herein.

8.       Plaintiff Lydia Scharf is a citizen and resident of the State of Ohio.  Plaintiff

Scharf purchased and used Greenies during the Class period and has suffered damages as a

2

result of the wrongful conduct of Defendant alleged herein and was injured as a result of an esophageal blockage caused by the ingestion of a Greenies.

9.     Plaintiff Gene Dubretskoy is a citizen and resident of the State of Maryland. Plaintiff Clark purchased and used Greenies during the Class period and has suffered damages as a result of the wrongful conduct of Defendant alleged herein.

10.     Plaintiff Pern Finer is a citizen and resident of the State of California. Plaintiff Finer purchased and used Greenies during the Class period and has suffered damages as a result of the wrongful conduct of Defendant alleged herein.

11.     Plaintiff Cheryl Stubbs is a citizen and resident of the State of Mississippi. Plaintiff Stubbs purchased and used Greenies during the Class period and has suffered damages as a result of the wrongful conduct of Defendant alleged herein.

12.     Plaintiff Wayne Amedure is a citizen and resident of the State of Michigan. Plaintiff Amedure purchased and used Greenies during the Class period and has suffered damages as a result of the wrongful conduct of Defendant alleged herein.

13.     Plaintiff Robert Magoon is a citizen and resident of the State of Colorado. Plaintiff Magoon purchased and used Greenies during the Class period and has suffered damages as a result of the wrongful conduct of Defendant alleged herein.

14.     Plaintiff Mark Judson is a citizen and resident of the State of Massachusetts. Plaintiff Judson purchased and used Greenies during the Class period and has suffered damages as a result of the wrongful conduct of Defendant alleged herein. Plaintiff Judson's pet dog was injured and had to undergo surgery as a result of the ingestion of Greenies.

15.     Plaintiff Anthony Cotellese is a citizen and resident of the State of Maryland. Plaintiff Clark purchased and used Greenies during the Class period and has suffered damages

3

as a result of the wrongful conduct of Defendant alleged herein. Plaintiff Cotellese's pet dog died as a result of an intestinal blockage after eating Greenies.

16.    Defendant S&M NuTec, LLC is a Missouri Limited Liability Corporation with its principal place of business located at 1 Design Drive, North Kansas City, Missouri. Defendant NuTec is engaged primarily in the business of manufacturing, marketing and selling an oral hygiene dog treat intended to aid in the cleaning of teeth and reduction of dental plaque and breath odor in canine pets (the "Greenie."). The Greenie is a green colored dog treat designed to look roughly like a toothbrush. It is manufactures and sold in several sizes intended to be fed to different sized dogs. Although NuTec manufactures and sells other pet treat products, Greenies represent by far the largest and most successful segment of the Company's business.

## JURISDICTION AND VENUE

17.    This action is within the original jurisdiction of this Court by virtue of 28 U.S.C. § 1332(d)(2). The matter in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs and some members of the proposed Class are citizens of a state different from that of Defendant NuTec.

18.    Venue is proper in this District under 28 U.S.C. § 1391. NuTec conducts substantial business activity, including advertising, marketing, distribution, and the sale of Greenies, at locations throughout this District.

## CLASS ACTION ALLEGATIONS

19.    Plaintiffs bring this class action pursuant to Federal Rule of Civil Procedure 23 on behalf of themselves and all others similarly situated who purchased Greenies during the

4

period February 25, 2000, through February 24, 2006 (the "Class" and the "Class Period"
respectively).

      20.    The members of the Class are so numerous that joinder of all members would be
impracticable. Plaintiffs estimate that there are at least tens hundreds of thousands of purchasers
of Greenies in the Class.

      21.    There are questions of law and fact common to the members of the Class that
predominate over any questions affecting only individual members, including:

      a.    Whether the Greenies were of merchantable quality at the times they were
sold;

      b.    Whether the defect inherent in the Greenies caused the Greenies to be
non-merchantable at the times they were sold;

      c.    Whether NuTec breached its implied warranty to the Class by selling non-
merchantable Greenies;

      d.    Whether NuTec was unjustly enriched by its sales of defective Greenies;

      e.    Whether, as a result of NuTec's misconduct, Plaintiffs and members of the
Class are entitled to damages, equitable relief and/or other relief, and the
amount and nature of such relief;

      f.    Whether the NuTec Greenies are defective;

      g.    Whether NuTec was aware of the defect inherent in Greenies; and

      h.    Whether NuTec was unjustly enriched by its sales of defective Greenies;

      22.    The claims of Plaintiffs are typical of the claims of the Class because Plaintiffs,
like all members of the Class, unknowingly purchased defective Greenies. Plaintiffs have no

5

interests antagonistic to those of the Class, and NuTec has no defenses unique to Plaintiffs or any of them.

23.     Plaintiffs will fairly and adequately protect the interests of the Class and have retained attorneys experienced in class and complex litigation.

24.     A class action is superior to other available methods for the fair and efficient adjudication of this controversy for the following reasons:

a.      It is economically impractical for members of the Class to prosecute individual actions because the damages suffered by each Class member may be relatively small, thus the expense and burden of individual litigation would make it very difficult or impossible for individual Class members to redress the wrongs done to each of them individually and the burden imposed on the judicial system would be enormous;

b.      The Class is readily ascertainable and definable; and

c.      Prosecution as a class action will eliminate the possibility of repetitious litigation.

25.     Plaintiffs do not anticipate any difficulty in the management of this litigation.

## SUBSTANTIVE ALLEGATIONS

26.     Greenies were developed by Dr. Joe and Judy Roetheli and were introduced by their company, Defendant NuTec, in 1998. Greenies are sold individually and in packages at prices equivalent to up to $16 a pound. Last year, hundreds of millions of individual Greenies were sold around the world, generating revenues of $340 million. This was nearly three times the sales of Greenies nearest competitor, Milk Bone, according to the marketing company Euromonitor International.

6

27.   Greenies have been criticized by consumers and some veterinarians, many of whom say they have performed surgery on pet dogs, including some dogs that did not survive, to remove chunks of the Greenies product from the dog's esophagus or digestive tract.

28.   The problem arises because Greenies can become lodged in a dog's esophagus or intestine and then swell and/or fail to break down. "I know they are marketed in saying that they do digest. Certainly the ones that we've taken out, esophageal or intestinal, that have been in for days are still very hard," Brendan McKiernan, a board-certified veterinary internal medicine specialist from Denver, Colorado, told CNN in a recent interview concerning Greenies. McKiernan said his Denver clinic has seen at least seven such cases in the past five years, which he said is an unusually high number.

29.   The packaging, promotional and advertising materials for Greenies state that the product is digestible and edible. Product packages state that the product is "100% edible." While this may be true in a strictly chemical and nutritional sense, in fact Greenies' composition is such that pieces are inherently dangerous and in many instances have injured dogs that have ingested them because (a) the manner of forming the Greenie from its component ingredients, primarily wheat gluten and fiber, results in a very hard product which can break apart in large pieces and (b) the combination of component ingredients in Greenies will swell to a greater than normal size when exposed to fluids in the dog's digestive tract. A dog which has ingested a sufficiently large piece of a Greenie which becomes stuck in the esophagus or intestine, unless the piece is dislodged, will be injured because digestion of the Greenie is much too slow and incomplete to dissolve the piece and indeed the moisture present can cause the piece of Greenie to expand, aggravating the obstruction. This combination makes Greenies more dangerous than other dog treat products and has resulted and continues to result in injuries and death to

Greenies users' pets in numbers that are greater than is the case with other such dog treats.

30.     Dr. Jayne Jensen is a veterinarian in the Seattle area, interviewed by KIRO television, who last year performed an operation on a client's dog and removed a large green lump from the dog's intestine. Dr. Jensen stated in the interview that the chunk of Greenie which she removed and which Defendant NuTec, on its packaging, said was 100% edible and "85% digestible," was in fact not digestible. Dr. Jensen further noted that, although the packaging advises that the dog should be "monitored" to assure that the Greenie is properly chewed, dogs, unlike humans, do not chew and in fact do not have the muscles that permit chewing.

31.     Dr. Jennifer McBride is also a veterinarian who has operated on dogs suffering internal blockages after eating teeth cleaning products, mostly Greenies. In an interview with KIRO, Dr. McBride stated, "We will see things in abdomens that will dissolve like bones and over time, they will dissolve and go away. But these are mostly undissolvable, so they tend to get stuck more often."

32.     On or about February 23, 2006, Defendant NuTec publicly stated that company regularly investigates consumer complaints about Greenies and sometimes reimburses pet owners for veterinary expenses or even to replace a dog that died. NuTec Founder and Chief Executive Joe Roetheli estimated the number of times NuTec has reimbursed owners since it began selling Greenies in 1998 at several dozen. The Company further said it *may* remove a claim that Greenies are fully edible, saying its own study shows a dog can only digest up to 85 percent of the bone-shaped treat.

8

**Plaintiffs And Members Of The Class Have Been**
**Damaged By NuTec's Sale Of Defective Greenies**

33.    As a result of the defective nature of the Greenies, members of the Class have been damaged.

34.    NuTec had direct knowledge of the defect in the Greenies during the Class Period, based on, at the very least, the complaints NuTec has received concerning Greenies since 1998.

35.    Despite NuTec's knowledge, NuTec failed to disclose to Plaintiffs and members of the Class that the Greenies are defective as discussed above.

36.    NuTec's failure to disclose the fact that Greenies are defective is an omission of material fact in that Plaintiffs would not have purchased Greenies had they known of the defect.

37.    Furthermore, Despite NuTec's knowledge of the defect inherent in the Greenies, NuTec continues to sell Greenies.

## COUNT I

**(By Plaintiffs Josh Glass, Fern Finer, Cheryl Stubbs, Wayne Amedure and Robert Magoon, individually, and on behalf of all similarly situated residents of Arkansas; California; Colorado; Connecticut; Hawaii; Indiana; Iowa; Michigan; Mississippi; Missouri; Nebraska; New Hampshire; New Jersey; New York; Oklahoma; Vermont; and West Virginia For Unjust Enrichment).**

38.    Plaintiffs reallege and reassert each and every allegation contained in the above paragraphs of this Complaint as if fully set forth herein.

39.    During the Class Period, NuTec designed and manufactured Greenies, which are defective as a result of the combination of the constituent wheat gluten, fiber and other products contained in Greenies and the molding process, which result in a product which is dangerously hard and dense, slow to dissolve, slow to digest and prone to break into large chunks or pieces when eaten by the dogs for which the product is intended.

9

40.    As a result of the defect, members of the Class have experienced injury to their pet dogs and/or have purchased a product that they would not have purchased had they known of the defect and the danger associated with the product and have thereby been damaged.

41.    NuTec had knowledge of the design defect in the Greenies prior to the time Plaintiffs purchased their Greenies as a result of the numerous complaints that it has received from its customers.

42.    Despite NuTec's knowledge of the design defect in the Greenies, NuTec has refused to inform consumers of the design defect -- a material fact-- and/or issue a recall of the Greenies.

43.    During the Class Period, Plaintiffs and members of the Class conferred upon NuTec, without knowledge of the design defect, payment for their Greenies, benefits which were non-gratuitous.

44.    NuTec accepted or retained the non-gratuitous benefits conferred by Plaintiffs and members of the Class despite NuTec's knowledge of the design defect in the Greenies. Retaining the non-gratuitous benefits conferred upon NuTec by Plaintiffs and the Class under these circumstances made NuTec's retention of the non-gratuitous benefits unjust and inequitable.

46.    Because NuTec's retention of the non-gratuitous benefits conferred by Plaintiffs and members of the Class is unjust and inequitable, NuTec must pay restitution in a manner established by the Court.

10

## COUNT II

(By Plaintiff Judy J. Clark, individually, and on behalf of all similarly situated
residents of Alaska, District of Columbia, Georgia; Kansas, Kentucky Maine, Minnesota,
Nevada, New Mexico, Oregon, Rhode Island, South Carolina, South Dakota, Utah,
Virginia, Washington and Wisconsin For Unjust Enrichment)

47.    Plaintiff Clark realleges and reasserts each and every allegation contained in the

above paragraphs of this Complaint as if fully set forth herein.

48.    During the Class Period, NuTec designed and manufactured Greenies, which are

defective as a result of the combination of the constituent wheat gluten, fiber and other products

contained in Greenies and the molding process, which result in a product which is dangerously

hard and dense, slow to dissolve, slow to digest and prone to break into large chunks or pieces

when eaten by the dogs for which the product is intended.

49.    As a result of the defect, members of the Class have experienced injury to their

pet dogs and/or have purchased a product that they would not have purchased had they known

of the defect and the danger associated with the product and have thereby been damaged.

50.    NuTec had knowledge of the design defect in Greenies prior to the time Plaintiff

purchased Greenies as a result of the numerous complaints that it has received from its

customers.

51.    Despite NuTec's knowledge of the design defect in the Greenies, NuTec has

refused to inform consumers of the design defect -- a material fact-- and/or issue a recall of the

Greenies.

52.    During the Class Period, Plaintiff and members of the Class conferred upon

NuTec, without knowledge of the design defect, payment for their Greenies, benefits which

were non-gratuitous.

11

53.     During the Class Period, NuTec appreciated, or had knowledge of the non-gratuitous benefits conferred upon it by Plaintiff and members of the Class.

54.     NuTec accepted or retained the non-gratuitous benefits conferred by Plaintiff and members of the Class despite NuTec's knowledge of the design defect in Greenies. Retaining the non-gratuitous benefits conferred upon NuTec by Plaintiff and members of the Class under these circumstances made NuTec's retention of the non-gratuitous benefits unjust and inequitable.

55.     Because NuTec's retention of the non-gratuitous benefits conferred by Plaintiffs and members of the Class is unjust and inequitable, NuTec must pay restitution in a manner established by the Court.

## COUNT III

**(By Plaintiffs Gene Dubretskoy, Fern Finer, Cheryl Stubbs, Robert Magoon, Mark Judson and Anthony Cotellese, individually, and on behalf of all similarly situated residents of: Alaska; Arkansas; Colorado; Delaware; Hawaii; Iowa; Louisiana; Maine; Maryland; Massachusetts; Minnesota; Mississippi; Montana; Nebraska; Nevada; New Hampshire; New Jersey; North Dakota; Oklahoma; South Carolina; South Dakota; Virginia; West Virginia; Wyoming and Texas For Breach of Implied Warranty of Merchantability)**

51.     Plaintiffs reallege and reassert each and every allegation contained in the above paragraphs of this Complaint as if fully set forth herein.

52.     At all times, there were in effect the following statutes governing the implied warranty of merchantability: Alaska Stat. § 45.02.314; Ark. Code Ann § 4-2-314; CRS § 4-2-314; 6 Del. C. § 2-314; HRS § 490:2-314; Iowa Code § 554.2314; 11 M.R.S.A. § 2-314; Md. Code Ann. Art. 95B § 2-314; Mass. Gen. Laws. Ch. 106 § 2-314; Minn. Stat. § 336.2-314; Miss. Code. Ann. § 75-2-314; MCA 30-2-314; Neb. UCC 2-314; NRS 104.2314; RSA 382-A:2-314; N.J.S.A. 12A:2-314; NDCC 2-314; O.S. 1991 § 2-314; S.C. Code Ann. § 36-2-314; SDCL 57A-

12

2-314; VA. Code § 8.2-314; W. VA. Code § 46-2-314; Wyo. Stat. 34.1-2-314; and Tex. Bus. & Com. Code Ann. § 2-314.

53.     As a seller and manufacturer of Greenies, NuTec is a "merchant," within the meaning of the various states' commercial codes governing the implied warranty of merchantability.

54.     The Greenies are "goods," as defined in various states' commercial codes governing the implied warranty of merchantability.

55.     Implied in the sale of the Greenies is a warranty of merchantability that requires, among other things, that the Greenies pass without objection in the trade and are fit for the ordinary purposes for which the Greenies are used.

56.     Because the Greenies are defective for the reasons alleged hereinabove, Greenies are not able to function for their ordinary purposes and, therefore, are not merchantable, as impliedly warranted by NuTec.

57.     Plaintiff Fern Finer has provided NuTec with timely notice of the defect in Greenies.

58.     Plaintiff Gene Dubretskoy has provided NuTec with timely notice of the defect in Greenies.

59.     Plaintiff Robert Magoon has provided NuTec with timely notice of the defect in Greenies.

60.     Plaintiff Mark Judson has provided NuTec with timely notice of the defect in Greenies.

61.     Plaintiff Anthony Cotellese has provided NuTec with timely notice of the defect in Greenies.

13

62.    Any purported disclaimer of the implied warranty of merchantability on the part

of NuTec fails of its essential purpose.

63.    The defect in the Greenies rendered the Greenies not merchantable and thereby

proximately caused Plaintiffs and Class members to suffer economic damages in an amount to

be ascertained at trial.

## COUNT IV

**(Plaintiff Lydia Scharf, individually, and on behalf of all similarly situated
individuals who purchased Greenies in Ohio for violations of Ohio Rev. Code Ann.
1345.02(a))**

61.    Plaintiff Lydia Scharf realleges and reasserts each and every allegation of the

above paragraphs of this Complaint as if fully set forth herein.

62.    Plaintiff and members of the Class are "consumers" as that term is defined in

Ohio Rev. Code Ann. §1345.01(D).

63.    During 2005, Plaintiff Lydia Scharf purchased Greenies.

64.    Plaintiff and members of the Class are "persons" as that term is used in Ohio

Rev. Code Ann. §1345.01(D), and as that term is defined in Ohio Rev. Code Ann. §1345.01(B).

65.    Ohio Rev. Code Ann. §1345.02 makes unlawful any unfair or deceptive act or

practice in connection with a consumer transaction.

66.    During the Class Period, NuTec manufactured, marketed and sold Greenies,

which are inherently dangerous, for the reasons set forth hereinabove. As a result of the

inherently dangerous nature of Greenies, members of the Class, including Plaintiff, have been

injured.

67.    NuTec had knowledge of Greenies' inherently dangerous nature prior to the time

Plaintiff purchased Greenies in their purchase and use of Greenies.

14

68.    Despite NuTec's knowledge of Greenies' inherently dangerous nature, NuTec has refused to inform consumers of Greenies' inherently dangerous nature, a material fact, in violation of Ohio Rev. Code Ann. § 1345.02.

69.    Excluding or misrepresenting the safe nature of Greenies is an omission or act that has the likelihood of inducing in the mind of the consumer a belief that is not in accord with the facts.

70.    Had Plaintiff and members of the Class known of Greenie's inherently dangerous nature, neither Plaintiff nor members of the Class would have purchased Greenies.

71.    As a result of NuTec's violations of Ohio Rev. Code Ann. § 1345.02(a), Plaintiff and members of the Class have sustained damages.

WHEREFORE, Plaintiffs pray that the Court enter judgment and orders in their favor and against NuTec as follows:

A.    An order certifying the Class and directing that this case proceed as a class action;

B.    Judgment in favor of Plaintiffs and the members of the Class in an amount of actual damages or restitution to be determined at trial;

C.    An order enjoining Defendant from the further sale of the Greenies;

D.    An order granting reasonable attorneys' fees and costs, as well as pre- and post-judgment interest at the maximum legal rate; and

E.    Such other and further relief as this Court may deem appropriate.

15

# DEMAND FOR TRIAL BY JURY

The Plaintiffs demand a trial by jury on all issues so triable as a matter of right.

Respectfully submitted this 24th day of February, 2006.

Plaintiffs Josh Glass, Judy J. Clark, Lydia
Scharf, Gene Dubretskoy, Fern Finer,
Cheryl Stubbs, Wayne Amedure, Robert
Magoon, Mark Judson and Anthony
Cotellese

By:

Arthur N. Abbey (AA 8074)
Stephen T. Rodd (SR 8228)
Gina M. Tufaro (GT 5419)
ABBEY GARDY, LLP
212 East 39th Street
New York, NY 10016
Telephone: (212) 889-3700

and

Steven J. Hyman  (SH 2097)
Alan E. Sash  (AS 8804)
MCLAUGHLIN & STERN, LLP
260 Madison Avenue
New York, New York  10016
Tel: 212-448-1100
Fax: 212-448-0066

16



SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK
--------------------------------X
Beth Joy Knutsen and
Kathleen Sullivan,

    -against-

Petco Animal Supplies Stores,
Inc. and Pet Food Experts, Inc.,

               Defendants.

--------------------------------X

Index No.: 107198/07

Date Purchased: 5/22/07

Plaintiffs designate New
York County as the place of
trial.

The basis of venue is
plaintiff's residence and
defendants' place of
business.

**SUMMONS**

To the above named defendants:

    **YOU ARE HEREBY SUMMONED** to answer the complaint in this

action and to serve a copy of your answer on the plaintiffs'

attorneys within twenty (20) days after the service of this

summons, exclusive of the day of service (or within 30 days

after the service is complete if this summons is not personally

delivered to you within the State of New York); and in case of

your failure to appear or answer, judgment will be taken against

you by default for the relief demanded in the complaint.


Dated:    New York, New York
          May 22, 2007

                           McLaughlin & Stern, LLP

                           By: _____
                           Alan E. Sash
                           Attorneys for Plaintiffs
                           260 Madison Avenue
                           New York, NY 10016
                           (212) 448-1100

ABBEY SPANIER RODD ABRAMS
& PARADIS, LLP
Arthur N. Abbey
Stephen T. Rodd
Orin Kurtz
212 East 39th Street
New York, New York 10016
(212) 889-3700

Defendants' Addresses:

Petco Animal Supplies Stores, Inc.
9125 Rehco Road,
San Diego, CA 92121
**(service upon NYS Dept. of State)**

Pet Food Experts, Inc.
1 John Deane Memorial Blvd.
Cumberland, Rhode Island 02864
**(service upon NYS Dept. of State)**

2

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK
```
-------------------------------X
```
Beth Joy Knutsen and
Kathleen Sullivan,

      -against-

Petco Animal Supplies Stores,
Inc. and Pet Food Experts, Inc.,

              Defendants.

```
-------------------------------X
```

Index No.: 107198/07

Date Purchased: 5/22/2007

Plaintiffs designate New
York County as the place of
trial.

The basis of venue is
plaintiff's residence and
defendants' place of
business.

NEW YORK
SUPPLEMENTAL SUMMONS

MAY 2 2 2007

NOT COMPARED
WITH COPY ON FILE

To the above named defendants:

      **YOU ARE HEREBY SUMMONED** to answer the amended complaint in

this action and to serve a copy of your answer on the

plaintiffs' attorneys within twenty (20) days after the service

of this supplemental summons, exclusive of the day of service

(or within 30 days after the service is complete if this

supplemental summons is not personally delivered to you within

the State of New York); and in case of your failure to appear or

answer, judgment will be taken against you by default for the

relief demanded in the amended complaint.

Dated:. New York, New York
       May 22, 2007

                    McLaughlin & Stern, LLP

                    By: Alan Sash

                    Alan E. Sash
                    Attorneys for Plaintiffs
                    260 Madison Avenue
                    New York, NY 10016
                    (212) 448-1100

ABBEY SPANIER RODD ABRAMS
& PARADIS, LLP
Arthur N. Abbey
Stephen T. Rodd
Orin Kurtz
212 East 39th Street
New York, New York 10016
(212) 889-3700

Defendants' Addresses:

Petco Animal Supplies Stores, Inc.
9125 Rehco Road,
San Diego, CA 92121
(service upon NYS Dept. of State)

Pet Food Experts, Inc.
1 John Deane Memorial Blvd.
Cumberland, Rhode Island 02864
(service upon NYS Dept. of State)

2



SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK
--------------------------------------------------X        Index No.: 107198/07
Beth Joy Knutsen and
Kathleen Sullivan,

        -against-

Petco Animal Supplies Stores,
Inc. and Pet Food Experts, Inc.,

           Defendants.

-------------------------------------------------X

## **NOTICE OF REMOVAL TO FEDERAL COURT**

TO:    Clerk of the Supreme Court of the State of New York, County of New York, and

       Alan E. Sash
       McLaughlin& Stern, LLP
       260 Madison Avenue
       New York, New York 10016
       (212) 448-1100

       Orin Kurtz
       Abbey Spainer Rodd Abrams & Paradis, LLP
       212 East 39th Street
       New York, New York 10016
       (212) 889-3700

       ATTORNEYS FOR PLAINTIFFS

           PLEASE TAKE NOTICE that Defendants PETCO Animal Supplies Stores, Inc.

and Pet Food Experts, Inc. have this date filed a Notice of Removal in the Office of the Clerk of

the United States District Court for the Southern District of New York (Notice of Removal

attached as Exhibit 1). There should be no further proceedings on this matter unless and until the

case is remanded.

Dated:  New York, New York
       June 28, 2007

## AFFIDAVIT OF SERVICE

STATE OF NEW YORK   )
                    )   ss.:
COUNTY OF NEW YORK )

     EILEEN GAMBINO,  being duly sworn, deposes and says:

     I am not a party to the action, I am over 18 years of age and I am employed at

One Whitehall Street, New York, New York 10004.

     On June 28, 2007, I served a true copy of the annexed **CIVIL COVER SHEET**

**AND NOTICE OF REMOVAL**  by mailing same in a sealed envelope with postage

prepaid in an official depository of the U.S. Postal Service within the State of New York

addressed

TO:   McLAUGHLIN & STERN, LLP
      Attention: Alan E. Sash, Esq.
      Attorneys for Plaintiffs
      260 Madison Avenue
      New York, New York 10016
      (212) 448-1100

      ABBEY, SPANIER, RODD, ABRAMS & PARADIS, LLP
      Attention:  Orin Kurtz, Esq.
      212 East 39th Street
      New York, New York 10016
      (212) 889-3700

                    _____
                    EILEEN GAMBINO

Sworn to before me this
28th day of June, 2007

_____

Notary Public

Arlene Savarese
NOTARY PUBLIC, State of New York
No. 01SA6146568
Qualified in Richmond County
Term Expires: May 22, 20 __